DECISION
Relator, Chacy Scott, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation benefits or, in the alternative, an order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (See Appendix A.) The magistrate concluded that relator had failed to meet his burden in mandamus and that this court should deny the requested writ.
Relator filed an objection to the decision of the magistrate. The objection focused on the commission's reliance on a medical report that was not in evidence before this court. The magistrate concluded that this court should presume the regularity and propriety of commission determinations absent a showing to the contrary, citing State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250. This conclusion of the magistrate is not necessary to the resolution of this case, however, and we modify the magistrate's decision to delete that conclusion.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them with the modification of her decision noted hereinabove. Accordingly, we adopt the decision of the magistrate as modified as our own. In accordance with the modified decision of the magistrate, the requested writ is denied.
Objection overruled; writ of mandamus denied.
TYACK, P.J., and BROWN, J., concur.
 APPENDIX A N THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT IN MANDAMUS
Relator, Chacy Scott, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that grants compensation, or, in the alternative, an order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
1. In 1978, Chacy Scott ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a fractured knee and ankle and right inguinal hernia. The claim was additionally allowed for arthritis of the knee and ankle, and post-traumatic stress disorder. Claimant had numerous surgeries.
2. In 1999, claimant filed a PTD application accompanied by a medical opinion from Dr. Raul Florez. On his application, claimant indicated that he completed the tenth grade but had to start working because his family needed the money. However, he indicated that he later obtained his G.E.D.
3. In May 2000, claimant was examined by Robin Stanko, M.D., who found claimant capable of performing work activity at sedentary levels, lifting up to ten pounds with specific restrictions that he listed on an accompanying form.
4. In June 2000, claimant was examined in regard to his psychological condition by Donald Brown, M.D., who opined that claimant's impairment from the condition was "mild." Claimant reported to Dr. Brown that he obtained his G.E.D. in 1990, and Dr. Brown observed that claimant related in an open, friendly and cooperative manner and handled the interpersonal aspect of the examination well. In regard to claimant's mental status, Dr. Brown found:
 * * * He was oriented to person, place, time and purpose of the examination. He seemed to be of average intelligence and capable of good judgment. He is able to comprehend and reason. His attention span and ability to concentrate were within normal limits. His memory was intact for recent and remote events. * * *
Dr. Brown opined that, based on the allowed psychological conditions, claimant was able to meet the basic mental/behavioral demands of returning to his former employment or other sustained remunerative employment. Dr. Brown stated that claimant could not return to work around open ditches, as his allowed condition resulted from being in a ditch that caved in.
5. An employability assessment was provided on claimant's behalf by Beal Lowe, Ph.D., who found claimant unable to work within his residual functional capacity.
6. An employability assessment was provided on behalf of the commission by Tracy Young, who noted that claimant would not be eligible for occupations requiring "higher level academic abilities." Ms. Young also found that the history of unskilled and semi-skilled work had left claimant with few skills that would provide a competitive edge in the labor market. However, she stated that the record presented no evidence that claimant was unable to develop skills.
7. In September 2001, claimant's PTD application was heard, resulting in an order denying compensation. In regard to the medical factors, the commission relied on the opinions of Drs. Stanko and Brown:
 Dr. Robin Stanko performed an independent physical examination and provided a detailed narrative report dated 05/18/2000. He considered all of the allowed physical conditions and his report and conclusions are found persuasive. He states the claimant is capable of sedentary work activity. This is consistent with the restrictions he lists on the Occupational Activity Assessment form. These restrictions would allow sedentary work as such is defined in the Industrial Commission Permanent Total Disability Policy Manual.
 Dr. Donald Brown performed an independent psychiatric evaluation and provided a detailed narrative report dated 06/05/2000. He considered all of the allowed psychiatric conditions and his report and conclusions are found persuasive. He states the claimant is capable of good judgment, is able to comprehend and reason, has a normal attention span and ability to concentrate, found the claimant's memory to be intact, and found the claimant to be of average intelligence. On the 05/25/2000 Occupational Activity Assessment form he indicates the claimant is capable of any sustained remunerative activity as far as the allowed psychiatric conditions are concerned.
In regard to the nonmedical factors and its ultimate conclusions, the commission stated:
The nonmedical disability factors are as follows:
 The claimant was born on 01/22/1938 and is currently 62 years old. He has a tenth grade education and, per the Permanent Total Disability Application dated 08/10/1992, can read, write and do basic math. He obtained a GED in 1990, through the child support department per the claimant's counsel. Both Dr. Brown (06/05/2000) and Dr. Howard (11/22/1998) found the claimant to be of average intelligence. The claimant has previously worked as a machine operator running a mill grove machine (75/76), a janitor (77/78), construction laborer (78), and finally as a dishwasher for three days through a temporary agency in 1997. The claimant essentially last worked on 12/21/1978, the date of the allowed injury, as the work in 1997 lasted only three days. In 1978 the claimant was only 40 years old.
* * *
 The claimant went through the tenth grade in school, can read, write and do basic math, and is of average intelligence. This level of intelligence and academic training provides the claimant the necessary tools to further educate and retrain to work within his physical restrictions. The claimant has demonstrated this by obtaining his GED in 1990. Generally, a person of this level of intelligence and capable of obtaining a GED is considered capable of performing semi-skilled through skilled work per the Industrial Commission Permanent Total Disability Policy Manual. With this background there is no reason the claimant could not learn and do at least semi-skilled and unskilled work.
 The claimant's work history is that of primarily heavier labor, unskilled work, that would provide little if any transferable skills to sedentary work. However, this is outweighed by his capacity to learn new skills and be retrained based on his academic abilities and his intelligence.
 Further, with the claimant's intelligence and academic abilities he would be capable of a number of sedentary unskilled jobs. Such jobs, by their very definition, do not require transferable skills. Further, per the Dictionary of Occupational Titles (Dictionary of Occupational Titles), such positions only require up to 30 days of training, often on-the-job. Even at age 62 the claimant would be capable of such a short period of retraining. Therefore, the claimant's age would also not bar the claimant from such work. Some examples of such sedentary work include[:] lens inserter (optical), stuffer (toys), preparation (jewelry), document preparation-microfilm, fishing-reel assembler, and parking lot cashier.
 Finally, it is noted the claimant last worked in 1978, at which time he was only 40 years old. He did undergo a number of surgeries from 1979 through 1984. However, after 1984 there appears to be a gap in the surgeries for a number of years. In 1985 the claimant would have been 47, still relatively young. He would have had plenty of time to obtain further education and retraining for work within his physical restrictions. He has shown by his ability to obtain a GED some six years later that he was capable of further education and retraining. He was even referred to the Rehabilitation Division in 1984 after his surgery. Unfortunately he failed to respond and his file was closed. There is no medical evidence indicating the claimant's allowed or nonallowed conditions prevented further education or retraining back in 1985. It appears the claimant chose not to pursue such avenues of re-employment enhancement back when he was still relatively young.
 Based on the above stated law, facts, reports and analysis, it is found the claimant is capable of sustained gainful employment and, therefore, permanent total disability is denied.
Conclusions of Law:
In this action, claimant argues that the commission failed to provide an adequate analysis of his nonmedical or vocational factors as required in Stephenson, supra. Claimant focuses on the commission's finding that claimant's intelligence was average.
In its order, the commission relied on the reports of Drs. Brown and Howard to support its finding of claimant's intelligence. In addition, the commission relied on the fact that claimant, having left school in 1956, obtained his G.E.D. in 1990. The magistrate concludes that claimant has not demonstrated in mandamus that the finding of average intelligence is unsupported by "some evidence."
First, even if the court were to agree that Dr. Brown's report was not "some evidence" of claimant's average intelligence, there was other evidence on which the commission relied. The court may uphold the finding if supported by other evidence that constitutes "some evidence." See State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78
(noting in regard to medical evidence supporting a PTD order that, even if Dr. Smith's report were removed from evidentiary consideration, there still remained the report of Dr. Gatens, thus providing adequate support for the commission's order).
Here, the commission also relied on the report of Dr. Howard. However, the parties have not provided the court with a copy of Dr. Howard's report. In the absence of proof, the court presumes the regularity and propriety of commission determinations. See, generally, State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250. Because relator has not established that the report of Dr. Howard cannot constitute "some evidence" as a matter of law, relator has not established that the finding was unsupported by "some evidence."
In addition, in its order, the commission relied on the fact that claimant was able to obtain his G.E.D. following his injury. The magistrate finds no abuse of discretion in the inference that an ability to pass the G.E.D. test more than twenty years after leaving school shows the possession of average intelligence.
In his brief, claimant also asserts that the commission abused its discretion in finding that he has average intelligence because his intelligence "in actuality" is below average. This assertion is based on an I.Q. test administered by Dr. Lowe in connection with the PTD application.
The magistrate finds, however, that Dr. Lowe's testing of claimant's intelligence was not conclusively binding on the commission. First, no expert's evaluation is conclusively binding on the commission, which may reject all or part of any vocational assessment. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139 . Second, testing of achievement or aptitudes is unlike testing of blood pressure, temperature, x-rays of bones, analysis of urine, etc. In tests of achievement or I.Q., a subject may lower his scores, unconsciously or consciously, where substantial gain is involved. Also, individuals may perform poorly on a "pen and pencil" test but perform much better in a "hands on" work setting.
This does not mean that achievement tests and aptitude tests cannot constitute "some evidence" on which the commission may rely. The point is merely that a low score on such testing does not provide a conclusive assessment of the matter being tested. Accordingly, the discrepancy between Dr. Brown's assessment of average intelligence and Dr. Lowe's assessment of below-average intelligence does not prove that Dr. Brown's assessment is defective as a matter of law. The fact that Dr. Brown's assessment was based on claimant's oral answers to questions (and general observations of claimant during the interview) and that Dr. Beal's assessment was based on written answers to questions (and his observations) does not mean that the commission lacked discretion to accept Dr. Brown's assessment. In sum, claimant has not proven that the commission abused its discretion in finding him to be a man of average intelligence.
Finally, claimant argues that "all" the evidence demonstrates that both the work history and education are "clear liabilities" to reemployment. The magistrate disagrees, finding that the commission may view a tenth-grade education followed by a G.E.D. to be an asset. The G.E.D. is a standardized test of academic achievement, showing possession of high-school levels of skills in reading, math, and other subjects. The commission is within its discretion to view this factor as positive for employment.
In addition, although the commission recognized claimant's present lack of marketable skills, it attributed this lack of skills to claimant's lack of effort toward vocational rehabilitation. The commission addressed the feasibility of such efforts, considering factors such as claimant's age and surgeries. Claimant's achievement of the G.E.D. in 1990 tends to show an ability to engage in efforts toward vocational rehabilitation. Thus, the commission was within its discretion to conclude that, to the extent claimant lacks current skills, this lack is attributable to his disinterest in further vocational rehabilitation. See, e.g., State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148; State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525; State ex rel. Wilson v. Indus. Comm. (1997),80 Ohio St.3d 250.
Based on the foregoing, the magistrate concludes that claimant has not met his burden in mandamus and recommends that the court deny the requested writ.